# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1049-23

E.S.,[1]

    Plaintiff-Respondent,

v.

Q.J.P.,

    Defendant-Appellant.

_____

> Submitted March 20, 2025 – Decided April 24, 2025
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-0775-24.
>
> Jalloh & Jalloh, LLC, attorneys for appellant (Abdul J. Roberts, on the brief).
>
> Law Offices of Proetta, Oliver & Fay, attorneys for respondent (Jeff Thakker, of counsel; Keith G. Oliver, on the brief).

PER CURIAM

---

[1] We use initials to protect the privacy of the parties. R. 1:38-3(d)(10).

Plaintiff E.S. filed this matter against defendant Q.J.P., her ex-boyfriend, under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, alleging a series of incidents that occurred between October 2022 and October 2023. The parties began dating in July 2022 and the relationship lasted approximately one year. Plaintiff claimed defendant's conduct constituted criminal mischief and harassment. At the end of a hearing, the trial judge found that the conduct qualified as harassment and criminal mischief, issued a final restraining order (FRO) against defendant, and denied his application for an FRO against plaintiff.

Defendant appeals, arguing the court: erred in finding he committed the predicate acts of criminal mischief and harassment and that a restraining order was necessary to prevent an "immediate or future threat to person or property"; abused its discretion by "allowing [plaintiff] to present evidence on claims not included in the pleading"; and incorrectly denied his application for a FRO against plaintiff. We find no merit in these arguments and affirm.

At the FRO hearing, plaintiff testified she purchased a 2022 Dodge Challenger for defendant's use, which he refused to return after the relationship ended. She further stated defendant ultimately returned the car to the Trenton Police Department after she had extensive communications with him and

employed various efforts to retrieve the vehicle through personal means and assistance from law enforcement. Plaintiff claimed the car was damaged when defendant returned it. It was: scratched on the exterior with a key or knife with additional scratches on the dashboard and window; the front seats cut with a knife; smelled of vinegar; the interior had been "doused" with a liquid or paint; a used condom was found in the backseat; and a torn-up picture from plaintiff's mother's obituary "strategically" placed on the front seat.

Plaintiff also testified defendant made previous threats, including statements he would hurt her if she did not stop attempting to retrieve the car, which she took seriously once she discovered defendant defaced the image of her mother from her obituary. Plaintiff presented various documents, videos, and photographs detailing the damage and her ownership of the vehicle, including a duplicate title to the car, which she received upon reporting the original title lost or stolen.

In his testimony, defendant acknowledged the car was titled in plaintiff's name. Defendant testified he did not damage the car, and the condition of the car was due to normal "wear and tear." He also contended plaintiff planted the condom in the car while police officers were present during the exchange, and the obituary merely got wet and deteriorated, causing it to rip. Defendant further

3

claimed to have purchased the car for $44,000, a sum he originally testified he saved from paychecks and retrieved from an ATM. He later testified, however, he accumulated the $44,000 in cash in a glass jar "piggy bank" consisting of twenty-, fifty-, and one-hundred-dollar bills, which he delivered to plaintiff on a football field with his young daughter who allegedly witnessed the transaction. Defendant claimed to possess the original title to the car purportedly signed by plaintiff and had proof of an appointment with the Motor Vehicle Commission to transfer title. Defendant's mother testified as well in a manner that corroborated his version of events.

With respect to defendant's application for a restraining order, plaintiff denied his allegations that she approached his workplace, made numerous threatening comments, left a note on his car, or sent anyone to his house. She further denied receiving any money from defendant as payment for the Challenger.

The judge found the parties had a qualifying relationship which permitted them to file under the PVDA and found defendant's testimony incredible. Specifically, the judge described defendant's explanation that he retrieved $44,000 for the car purchase from a "piggy bank," subsequent cash exchange, and obituary defacement explanation as "preposterous." The judge found

4

defendant committed the predicate acts of criminal mischief, due to the damage to the car, and harassment as defined by N.J.S.A. 2C:33-4(a) and (c), given his prior threats to hurt plaintiff if she continued to seek return of the car and history of harassing conduct. Further, under the two-part test established in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), the judge found a continuing need to protect plaintiff because of the violent way in which the car was damaged and defendant's threats to hurt her. Next, the judge found defendant failed to establish the alleged predicate acts of criminal mischief and harassment against plaintiff and denied his request for an FRO. In light of this finding, the judge did not address Silver's second prong.

In considering our standard of review, which requires deference to the trial judge's findings and special deference to family judge findings, Cesare v. Cesare, 154 N.J. 394, 411-13 (1998), we conclude defendant has not presented a principled reason for our second-guessing the trial judge's findings or legal conclusions. We accordingly affirm for the reasons stated in the trial judge's oral decision and subsequent amplification letter submitted under Rule 2:5-1(d), which we address herein.

Before us, defendant raises six arguments, all of which lack merit. In his first point, contrary to defendant's argument the court erred in finding he

5

committed the predicate act of criminal mischief, the judge found plaintiff presented sufficient evidence to show defendant damaged the vehicle. He argues he did not "purposely and knowingly" damage the car because: the car's condition was a result of normal use; the damage could have occurred after he returned the car to the police station; he would not have planted a condom because he transported his children in the car; and he believed the car was his.

Criminal mischief is an enumerated predicate act under N.J.S.A. 2C:25-19(a)(10). A person commits the offense of criminal mischief if he "[p]urposely or knowingly damages [the] tangible property of another." N.J.S.A. 2C:17-3(a)(1). The judge found defendant's narrative that he purchased the vehicle with money obtained from a "piggy bank" did not "overcome [plaintiff's] documentary proof of her ownership of the vehicle" because the "title is conclusive of ownership." The judge further concluded plaintiff credibly testified as to the damage, which she corroborated with photographic evidence and found "the last time [plaintiff] saw the car . . . it was in pristine condition and when she retrieved it . . . there were cuts on the seat, . . . scratches on the . . . screen . . . , it was soiled . . . with a large stain of a substance, [and] there was . . . what appeared to be a used condom in the back of the car." Finally, the judge found defendant was in control of the vehicle prior to its return and

A-1049-23

plaintiff's "insistence on its return . . . gave [defendant] motive to . . . damage it."  We find no reason to upset those findings.[2]

Second, defendant argues his comment that "he would hurt her and come to her house if she didn't stop trying to obtain her vehicle" was not "tantamount to harassment" because the statement was not made with the purpose to harass, but instead made "during a dispute with a former romantic partner."  We reject this argument.

A defendant may engage in the predicate act of harassment if, "with purpose to harass another," the defendant "[m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm."  N.J.S.A. 2C:33-4(a).  "[A]nnoyance or alarm" is understood as conduct that is designed "to disturb, irritate, or bother."  J.D. v. M.D.F., 207 N.J. 458,

---

[2]  With respect to the predicate act of criminal mischief, the judge also commented that "even if the damage to the vehicle was incidental to [defendant's use of it] in connection with his employment," he negligently failed to use the same degree of care as he did with respect to his own vehicles.  We are satisfied after our review of the entire record, and the court's factual findings and related legal conclusions, defendant "purposely or knowingly" damaged plaintiff's car.  We accordingly need not, and do not, address the propriety of the judge's dicta rejecting defendant's contentions as detailed above, as we review orders, not opinions.  Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion.").

477 (2011) (quoting State v. Hoffman, 149 N.J. 564, 580 (1997)). A defendant may also harass another if the defendant "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c).

Harassment can only occur, however, if a "defendant act[s] with the purpose of harassing the victim." D.M.R. v. M.K.G., 467 N.J. Super. 308, 323 (App. Div. 2021). "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). But "that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). Although a single communication may be sufficient to establish a defendant's liability under the harassment statute, a trial court must, nevertheless, "consider the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

The judge found "harassment under [N.J.S.A.] 2C:33-4(a), where . . . [defendant made] a communication with the purpose to harass in a manner that would cause annoyance [or] alarm . . . [b]ased on the fact that he

said . . . he would hurt her and come to her house if she didn't stop trying to obtain her vehicle." The damage to the car itself, specifically the torn obituary, also constituted harassment because it "served no purpose . . . under the circumstances," and the "court infer[red] . . . it was left for the purpose of annoying or alarming [plaintiff]." The judge also determined defendant's "course of alarming conduct" established harassment under N.J.S.A. 2C:33-4(c) based on plaintiff's testimony about defendant's history of violence, including abandoning her in Washington, D.C., threatening to shoot one of her relatives, arriving at her place of work unannounced, accusing her of cheating, and threatening to break her car window. As noted, we find defendant's arguments unavailing and see no reason to upset the judge's conclusions.

Third, under Silver's second prong, we reject defendant's argument the record failed to establish a prior history of domestic violence, and that his actions and comments "do not suggest . . . [he] will continue to harass or commit acts of criminal mischief against [plaintiff]." The judge found defendant's actions in damaging the car and his various threats were violent, vindictive, and unprovoked, requiring an FRO to prevent future acts of violence. Again, we discern no reason to overturn the factual and credibility findings of the judge who rejected largely the same arguments below due to defendant's lack of

9

credibility and conclude plaintiff presented sufficient credible evidence to support the judge's findings. See Cesare, 154 N.J. at 411-13.

Fourth, we find defendant's argument, raised for the first time on appeal, that the court improperly permitted plaintiff's testimony concerning prior alleged harassment because she did not check the box indicating harassment on the temporary restraining order (TRO) application, unavailing. This issue was addressed during the FRO hearing where the judge permitted plaintiff to "conform the complaint to what's already been alleged." Defendant further stated he understood the inclusion of harassment as an alleged predicate act.

Moreover, plaintiff's amended TRO application contained allegations of harassment over the course of the parties' relationship. Despite her inadvertent failure to check the box for harassment, the body of the complaint set forth the incidents of harassment, defendant was aware of the allegations, had an opportunity to confront plaintiff, present proofs in opposition to her statements, and support his opposing request for an FRO. Under the circumstances, we find no error in the court's consideration of harassment as a predicate act and further conclude no due process violation occurred. See J.D., 207 N.J. at 478 (holding that due process under the PDVA requires notice of the issues and an opportunity to be heard and respond, and forbidding a court from converting a hearing

alleging one act of domestic violence into a hearing on acts not alleged in the complaint.)

We reject defendant's fourth contention that the court prevented him from presenting evidence concerning alleged attacks by plaintiff's relatives and testimony from his mother about the car's insurance and possession of a title. The record reflects the judge permitted defendant to present testimony from his mother. During her testimony, the mother stated he provided her the title with plaintiff's signature, she did not see plaintiff or defendant sign the title, and communicated with plaintiff concerning an appointment to transfer title at the Motor Vehicle Commission.

The judge did, however, explain to defendant the court did not need testimony from his three children—ages seven, twelve, and sixteen—whom he intended to call as witnesses with respect to the amount of money removed from defendant's "piggy bank" and the alleged exchange of payment. After extended discussion concerning the content of the children's testimony, the judge concluded the testimony was unnecessary because only one of the children was present for the purported exchange and stayed in the car. We discern no abuse of discretion. See Rodrigues v. Wal-Mart Stores, 237 N.J. 36, 57 (2019) ("[e]videntiary decisions are reviewed under the abuse of discretion standard

11

because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion."); <u>N.J. Div. of Child Prot. & Permanency v. A.B.</u>, 231 N.J. 354, 366 (2017); <u>see also</u> N.J.R.E. 403.

Further, defendant briefly mentioned the existence of a video, which according to his brief, purportedly showed plaintiff "behaving obnoxiously" in a fast-food restaurant where defendant and his new girlfriend were dining. He claims the judge erred in denying his request to present the video but provides no citation to the FRO hearing transcript to support his argument. Instead, the transcript reflects defendant briefly mentioned the existence of a video showing an "incident that occurred just recently," but he never offered the video to the court for consideration to be admitted into evidence.

Finally, we reject defendant's argument the court erred in denying his application for an FRO against plaintiff. With respect to defendant's claim of criminal mischief, the judge found he failed to present evidence to prove by a preponderance of the evidence plaintiff engaged in criminal mischief. In support of his claim of harassment, defendant argues he was repeatedly subject to stalking because plaintiff would bang on his door at odd hours and had him attacked. The judge found he failed to present evidence of harassment. Again, having considered the record, we discern no reason to overturn the judge's

findings on defendant's evidentiary contentions or the denial of his FRO application. See Cesare, 154 N.J. at 411-13.

To the extent we have not addressed any of defendant's other arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-2(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13

A-1049-23